IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| FRANCIS JAMES GANNON, ) | CIVIL ACTION NO. 9:15-3250-RMG-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein he was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a)(D.S.C.).

Plaintiff applied for Disability Insurance Benefits ("DIB") on July 10, 2012 (protective filing date), alleging disability beginning January 1, 2012, due to irritable bowel syndrome (IBS), post-traumatic stress disorder (PTSD) with co-morbid major depressive disorder, agoraphobia, panic attacks, and anxiety attacks. (R.pp. 16, 166, 179, 182). Plaintiff's claim was denied both initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on September 9, 2014. (R.pp. 34-82). The ALJ thereafter denied Plaintiff's claim in a decision issued October 31, 2014. (R.pp. 16-29). The Appeals Council denied Plaintiff's



request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-3).

Plaintiff then filed this action in United States District Court. Plaintiff asserts that the ALJ's decision is not supported by substantial evidence, and that this case should be remanded to the Commissioner for further proceedings. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)); see also Hepp v. Astrue, 511 F.3d 798, 806 (8th Cir. 2008)[Noting that the substantial evidence standard is even "less demanding than the preponderance of the evidence standard"].

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a *de novo* judicial



2

proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

### Medical History

Plaintiff is an Iraq war veteran. In 2009, several years prior to Plaintiff's alleged onset date of disability, Plaintiff was treated by Dr. Leslie Sanders for PTSD. (R.p. 836). In a September 2009 consultative examination with Dr. Paul Manshelm of Riverpoint Psychiatric Associates, Plaintiff reported that he was not taking any medication for a mental condition. Dr. Manshelm assigned Plaintiff a global assessment of functioning (GAF) score of 80.[1] (R.pp. 841-854).

In January 2011, nurse practitioner (NP) Catherine Schmitz, of the Veterans Administration Medical Center (VAMC), noted that Plaintiff's thought process was disorganized and his insight was poor, but that his mood was euthymic, his affect was pleasant (although he became tearful when "telling of dead soldiers"), his behavior was normal, his judgment was fair, and he denied suicidal or homicidal ideation. NP Schmitz assessed Plaintiff's GAF score as 55.[2] (R.pp. 626-627). NP Schmitz again assessed Plaintiff's GAF score as 55 in April 2011, noting that Plaintiff had

---

[1] Clinicians use the GAF "to rate the psychological, social, and occupational functioning of a patient." Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 597 n.1 (9th Cir. 1999). A GAF score between 71 and 80 represents symptoms that "are transient and expectable reactions to psycho-social stressors (e.g., difficulty concentrating after family argument)" causing "no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork)." Diagnostic and Statistical Manual of Mental Disorder (DSM-IV), 32 (4th ed. 2000).

[2] As discussed further herein, Plaintiff's GAF was generally in the range of 50 to 60 from his alleged onset date of disability until his date last insured. A GAF of 51 to 60 indicates the presence of only moderate symptoms. Perry v. Apfel, No. 99-4091, 2000 WL 1475852 at *4 (D.Kan. July 18, 2000); Matchie v. Apfel, 92 F.Supp.2d 1208, 1211 (D.Kan. 2000).



poor insight, but that his behavior was within normal limits, his thought process was logical and linear, his memory and orientation were intact, and his judgment was fair. (R.pp. 610-611).

In July 2011, Plaintiff underwent an upper GI endoscopy and colonoscopy, and was thereafter diagnosed with IBS. (R.pp. 309-312, 582). In August 2011, Plaintiff reported to NP Schmitz that he was working for his father, but was not doing well, had panic attacks, and went to the emergency department on a couple of occasions. Plaintiff was not taking his medication. NP Schmitz again assigned Plaintiff a GAF score of 55. (R.pp. 589-591). An x-ray of Plaintiff's cervical spine showed mild degenerative disc disease at C5-6, with bilateral foraminal narrowing at C5-6 and C6-7. (R.p. 270).

In August 2011, NP Schmitz again assigned Plaintiff a GAF score of 55. She noted that Plaintiff's affect was sad and anxious, but that his mood was euthymic, his behavior was within normal limits, his thought process was logical and linear, his memory and orientation were intact, and his insight and judgment were fair. (R.pp. 447-448).

On September 9, 2011, Dr. Sabrina O'Kennon, a psychologist at the VA, reviewed Plaintiff's records, performed a Compensation and Pension Examination, and completed a Review PTSD Disability Benefits Questionnaire. Dr. O'Kennon noted that Plaintiff had a depressed mood, anxiety, a chronic sleep impairment, a memory impairment, and neglect of personal appearance or hygiene, and assessed a GAF of 50. (R.pp. 368-377).[3] Dr. O'Kennon later concluded:

> Overall, there does not appear to be enough symptomology to eliminate [the] possibility of [Plaintiff] being productive in the workforce in some capacity. He is not

---

[3] "A GAF score of 41 to 50 is classified as reflecting 'serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job.).'" Boyd v. Apfel, 239 F.3d 698, 702 (5th Cir. 2001).



> currently participating in treatment for PTSD[] (no therapy or medications). The inclusion of said treatments may significantly increase his ability to work.

(R.p. 367). In October 2011, an MRI of Plaintiff's shoulder revealed mild bilateral acromioclavicular joint arthropathy. (R.p. 268).

As noted, Plaintiff does not himself contend that his impairments were disabling during the time period covered by these medial records. Therefore, in order to be entitled to DIB, Plaintiff must show that his condition substantially worsened after 2011. Cf. Orrick v. Sullivan, 966 F.2d 368, 370 (8th Cir. 1992) [absent showing of significant worsening of condition, ability to work with impairment detracts from finding of disability].

On March 12, 2012, which was now approximately two months after Plaintiff's alleged onset date of disability, he complained to NP Schmitz about poor sleep and feeling hypervigilant and stressed. She assessed his GAF as 55 and prescribed Citalopram. (R.pp. 434). In June 2012, Plaintiff admitted he had been less than perfectly compliant with his medication. Dr. Emmett Lampkin, a psychiatrist at the VAMC, noted that Plaintiff's mood seemed anxious, but that his behavior was unremarkable, he had a good range of affect which Dr. Lampkin also noted was manipulative, his thought content was normal, his cognition was grossly intact, and his insight and judgment were fair. Dr. Lampkin diagnosed Plaintiff with a history of PTSD and alcohol abuse disorder, and assessed Plaintiff's GAF as 58. (R.pp. 389-391).

On July 16, 2012, NP Schmitz noted that Plaintiff's mood was depressed and anxious, but that his behaviors were within normal limits (but was tearful at times), he had a good range of affect and was manipulative, his thought process was normal, his cognition was grossly intact, and he had fair insight and judgment. She recommended that Plaintiff start taking Bupropion and Prozac.



(R.pp. 380-381). However, notwithstanding this generally favorable report, NP Schmitz wrote a letter in which she opined that Plaintiff was "100% unable to work due to the PTSD for the foreseeable future." (R.p. 253).

In September 2012, Plaintiff reported to NP Schmitz that he thought death might be a relief, but stated he would never commit suicide. NP Schmitz noted that Plaintiff's mood was seemingly anxious, and assigned a GAF of 58. (R.pp. 676-677). Plaintiff was treated in the emergency department for IBS symptoms in September 2012, but a CT of his abdomen and pelvis showed no acute process. (R.pp. 637-638, 659-661).

On October 15, 2012, Dr. O'Kennon completed a Compensation and Pension examination. She completed another Review PTSD Disability Benefits Questionnaire in which she indicated that Plaintiff had occupational and social impairment with deficiencies in most areas including work. Dr. O'Kennon checked boxes indicating that Plaintiff had symptoms of depressed mood; anxiety; panic attacks more than once a week; near continuous panic or depression affecting ability to function independently, appropriately, and effectively; impairments of short-term and long-term memory; disturbances of motivation and mood; difficulty in establishing and maintaining effect work and social relationships; difficulty in adapting to stressful circumstances, including work; suicidal ideation; impaired impulse control; and neglect of personal appearance and hygiene. She indicated that since her last examination in September 2011, Plaintiff had no significant changes and continued to be relatively isolated. Dr. O'Kennon noted NP Schmitz's July 2012 opinion that Plaintiff was 100% unable to work due to PTSD. She also noted that at Plaintiff's last evaluation he was working for his father, but had been fired for an inability to do the job due to severe panic episodes, and remained unemployed. (R.pp. 786-795). Dr. O'Kennon also wrote:



>Given [Plaintiff's] severity of PTSD [symptoms] (frequent panic episodes and suicidal ideation) it is the contention of this evaluator that [Plaintiff] is currently unable to obtain and sustain gainful employment.

(R.p. 787).[4]

In November 2012, Dr. Cashton Spivey, a psychiatrist, examined Plaintiff and noted that his mood was sad with a labile affect; he had a logical and coherent thought process; his insight, judgment, attention and concentration were fair; and his psychomotor functioning was within normal limits. Dr. Spivey diagnosed Plaintiff with PTSD and panic disorder with agoraphobia, and assigned a GAF of 50, with the highest in the last year of 60. He opined that Plaintiff might be capable of understanding simple instructions and performing simple tasks in the workplace, which assessment was based primarily on an estimate of Plaintiff's general intelligence score likely falling in the average to low average range. (R.pp. 758-761).

On November 30, 2012, state agency psychologist Dr. Olin Hamrick reviewed Plaintiff's records and opined that Plaintiff had a mild restriction on activities of daily living; moderate difficulties in maintaining social functioning; and mild difficulties in maintaining concentration, persistence, or pace. He further opined that overall Plaintiff's mental impairments would not preclude him from performing simple, repetitive work tasks in a setting that did not require ongoing interaction with the public. (R.pp. 89, 95).

On December 4, 2012, state agency physician Dr. Hugh Wilson opined that Plaintiff had the RFC to occasionally lift/carry twenty pounds, frequently lift/carry ten pounds; stand/walk or

---

[4]This note is dated October 15, 2012, but was not entered until December 20, 2012. The date of the note is somewhat unclear, as it references Plaintiff being terminated by his father before Christmas. However, as the parties appear to refer to this as the October 2012 opinion, the undersigned will also do so to for consistency. (R.pp. 786-787).



sit for six hours each per workday, and had limited capacity to reach overhead with his right arm. (R.pp. 92-93).

On January 7, 2013 Plaintiff received a combined service-connected evaluation rating of 80% from the VA. (R.p. 177). Plaintiff had a disability rating of 70% for PTSD, 30% for colon problems, 10% for tinnitus, and 10% for scarring, which combined totaled 80% under the VA's weighting system. (R.p. 287). Plaintiff was considered by the VA to be totally and permanently disabled due to his service-connected disabilities effective January 25, 2011. (R.p. 177).

On March 1, 2013, state agency psychologist Dr. Judith Von reviewed Plaintiff's records and opined that he had mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning; and mild difficulties in maintaining concentration, persistence, or pace. She opined that Plaintiff had no cognitive restrictions; could regularly attend work and concentrate for required periods; would be best suited for positions with limited or structured interactive demands; and could travel independently, adhere to basic standards of neatness and hygiene, and sustain a typical work routine. (R.pp. 105, 111).

On March 23, 2013, Dr. Shaun Nguyen examined Plaintiff and found that Plaintiff had a normal gait, normal range of motion in his shoulders, and 5/5 (full) strength. Plaintiff reported to Dr. Nguyen that he could walk one mile and could stand for thirty minutes at one time. (R.pp. 821-825).

An x-ray of Plaintiff's right shoulder in April 2014 showed mild degenerative changes. (R.p. 267). A right shoulder MRI in May 2014 indicated a high-grade partial undersurface tear of his distal supraspinatus tendon, with a chondral irregularity concerning for a superior labrum anterior and posterior tear. (R.p. 266).



On April 23, 2013, state agency physician Dr. Jean Smolka opined that Plaintiff had the RFC to occasionally lift-carry twenty pounds; frequently lift/carry ten points; stand/walk or sit for six hours each per workday.  She further opined that Plaintiff could frequently push and pull with his right arm; frequently stoop, kneel, crouch, and climb ramps stairs; occasionally crawl and climb ladders, ropes, and scaffolds; could balance on an unlimited basis; was limited as to his right overhead reaching on his right; and should avoid concentrated exposure to extreme heat and hazards. (R.pp. 108-109).

On June 9, 2014, Plaintiff reported to Dr. Marc Ishizuka, a psychiatrist at the VA, that he experienced depression, anxiety, and poor sleep.  Dr. Ishizuka noted that Plaintiff's mood was very anxious; his affect was "a little" constricted and slightly anxious; behavior was cooperative, friendly, polite, and sincere; insight and judgment were good; and there was no tangential or circumstantial thought process.  Dr. Ishizuka diagnosed Plaintiff with tobacco use disorder, alcohol use disorder, panic disorder with agoraphobia, PTSD, insomnia related to PTSD, and dysthymia. (R.pp. 856-860).

## Discussion

A review of the record shows that Plaintiff, who was forty years old on his alleged disability onset date, has a high school equivalency education (GED) and past relevant work as a network administrator and a tugboat captain.  (R.pp. 28, 183-184, 266).  In order to be considered "disabled" within the meaning of the Social Security Act ("SSA"), Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months.



After a review of the evidence and testimony in this case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[5] of anxiety disorders and affective disorders (R.p. 18), he nevertheless retained the residual functional capacity (RFC) for a restricted range of light work.[6] Specifically, the ALJ found that Plaintiff was restricted to lifting or carrying up to twenty pounds occasionally and ten pounds frequently; could sit, stand, or walk for six hours each in an eight-hour workday; could occasionally climb ladders, ropes, and scaffolds; could frequently climb ramps and stairs; could frequently stoop, crouch, kneel, or crawl; could frequently reach overhead with his right upper extremity; and must avoid concentrated exposure to extreme heat, use of moving machinery, and exposure to unprotected heights. The ALJ also limited Plaintiff to simple, routine, and repetitive tasks; work performed in an environment free of fast-paced production requirements; work involving only simple, work-related decisions, with few, if any, work-place changes; with only occasional interaction with the public; isolated work; and only occasional supervision. (R.p. 21). At step four, the ALJ found that Plaintiff was unable to perform any of his past relevant work. (R.p. 28). However, the ALJ obtained testimony from a vocational expert ("VE") and found at step five that Plaintiff could perform other jobs existing in significant numbers in the national economy with these limitations, and was therefore not disabled during the period at issue. (R.pp. 28-29).

---

[5] An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140–142 (1987).

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).



Plaintiff asserts that in reaching this decision the Commissioner erred because he failed to properly evaluate the VA rating decision and failed to evaluate Dr. O'Kennon's opinions on which the VA substantially relied. After careful review and consideration of the evidence and arguments presented, the undersigned is constrained to agree with the Plaintiff that the ALJ failed to properly consider his VA rating and to properly evaluate all of the evidence, thereby requiring a remand of this case for additional review.

The VA assigned Plaintiff a combined rating of 80% for his service-connected disabilities, but compensated him at the rate of 100% based on a finding that he was entitled to unemployability. (R.p. 177). While a VA disability determination is not binding on the SSA, Plaintiff is nonetheless correct that such a determination is ordinarily entitled to substantial weight. See Bird v. Commissioner of Social Security, 699 F.3d 337, 343-344 (4th Cir. Nov. 9, 2012) ["SSA must give substantial weight to a VA disability rating"]. Although an ALJ "may give less weight to a VA disability rating [if a finding is made that] the record before the ALJ clearly demonstrates that such a deviation is appropriate;" Bird, 699 F.3d at 343; it is incumbent upon the ALJ to explain his or her rationale if they do so. See SSR 06-03P, 2006 WL 2329939, at * 7 (SSA) [ALJ "should explain the consideration given to [the VA disability determination] in notice of decision . . ."]; cf. Kowalske v. Astrue, No. 10-339, 2012 WL 32967, at * 4 (W.D.N.Y. Jan. 6, 2012)[Noting that since the VA determination is itself entitled to at least some evidentiary weight in addition to the other record evidence, the adjudicator should explain the consideration given to this decision]; Jamiah v. Astrue, No. 09-1761, 2010 WL 1997886, at * 16 (N.D.Ga. May 27, 2010)[Noting that due to the significance of a VA determination, the ALJ must state specifically the weight accorded the evidence and the reason for his decision].

11



The ALJ did not comply with this requirement in this case. Although the ALJ noted that Plaintiff testified that he (Plaintiff) was 100% disabled with the VA (R.p. 22) and acknowledged that the VA had assessed Plaintiff with a service-related disability (R.p. 27), the ALJ did not discuss the percentage of disability, the basis for the VA's findings, or properly explain why he was affording the VA rating little weight, in direct violation of Bird. See (R.pp. 27, 177-178, 278). Rather, the ALJ simply stated that he was giving the VA's service-related disability rating little weight because "any opinion expressed by the VA as to [Plaintiff's] disability is based on different definitions, procedures, regulatory findings and assumptions than those employed by the Social Security Administration." (R.p. 27). However, while the VA's definition of disability and procedures employed to evaluate a claimant's degree of disability are different than those prescribed by the SSA (R.p. 27), that is not itself a basis on which to disregard the VA's findings. Bird, 699 F.3d at 343-344. The ALJ did not cite Bird or explain why he deviated from the requirement in Bird that VA ratings are to be given substantial weight. Id., at 343 [If ALJ does not give "substantial weight" to VA decision, he must "clearly demonstrate[ ] that such a deviation is appropriate"].

Additionally, the ALJ never discussed the opinions of Dr. O'Kennon, including her October 2012 opinion that Plaintiff was "currently unable to obtain and sustain gainful employment" (R.p. 787),[7] even though Plaintiff specifically argues that the VA's determination that Plaintiff was

---

[7]Regardless of the source, the Commissioner is to evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). Further, in evaluating medical opinions, generally more weight is given to the opinions of an examining source than a non-examining one, and to opinions of treating sources than non-treating sources, such as consultative examiners. Id. An ALJ also is to generally consider the length and nature of the source's treatment relationship with the claimant, the supportability of the opinion, the opinion's consistency with the other evidence in the record, whether the source is a specialist, and any other factors that may support or contradict the opinion. Id.

12



to be compensated at the rate of 100% because he was found to be entitled to unemployability was based on Dr. O'Kennon's Compensation and Pension examinations.  Cf. Cotter v. Harris, 642 F.2d 700 (3rd Cir. 1981)  [listing cases remanded because of failure to provide explanation or reason for rejecting or not addressing relevant probative evidence].  Although the Commissioner does not appear to dispute that the ALJ failed to discuss Dr. O'Kennon's opinions, the Commissioner argues that Dr. O'Kennon had previously concluded in September 2011 that there did "not appear to be enough symptomology to eliminate [the] possibility of [Plaintiff] being productive in the workforce in some capacity"  (Commissioner's Brief, ECF No. 9 at 17; R.p. 367), that Dr. O'Kennon noted no major changes from the September 2011 to October 2012 opinions, and contends that Dr. O'Kennon changed her opinion based on the June 2012 opinion of NP Schmitz.  The Commissioner then goes on to argue that, because the ALJ discussed and declined to adopt NP Schmitz's opinion, considered other post-VA rating medical evidence (including records and/or opinions from Drs. Spivey, Hamrick, Von, and Ishizuka), and considered Plaintiff's activities of daily living, the ALJ reasonably considered Dr. O'Kennon's October 2012 opinion and the VA rating because Dr. O'Kennon's opinion and the VA rating were based on NP Schmitz's opinion and were not supported by the additional evidence of record.  The Commissioner also argues that the ALJ had more than a year of treatment notes that postdated Dr. O'Kennon's October 2012 analysis, and that the ALJ's RFC determination was based in part on this evidence, which was not before Dr. O'Kennon at the time she offered her opinion.

However, these arguments are merely post hoc rationalizations by the Commissioner to justify what the ALJ did in this case.  The ALJ did not himself provide the analysis and findings relating to Dr. O'Kennon's opinions as are argued by the Commissioner in her brief.  Nester v. Astrue, No. 08-2045, 2009 WL 349701 at * 2 (E.D. Feb. 12, 2009)[Noting that the Court "may not consider



*post hoc* rationalizations but must evaluate only the reasons and conclusions offered by the ALJ."]. Further, the undersigned is constrained to note that Dr. O'Kennon noted in her September 2011 questionnaire that Plaintiff had the psychosocial and environmental problems of an "inability to sustain employment" (R.p. 566), and that in the six months after Plaintiff's prior (March 2011) review, Plaintiff unsuccessfully tried to start his own business, was immediately let go from his next position working from home answering calls about customers' internet problems because Plaintiff became frustrated and tearful with a customer on the phone, and that Plaintiff worked for his father less than half time and was not doing all the required work. While Dr. O'Kennon also stated that she could not eliminate the possibility of Plaintiff being productive in the workforce in some capacity because the inclusion of therapy and or medications for PTSD (as Plaintiff was not currently participating in such) might significantly increase Plaintiff's ability to work (R.pp. 563-564), her later opinion appears to account for further treatment and that Plaintiff was later fired by his father. (R.p. 767). Additionally, although the Commissioner appears to argue that Dr. O'Kennon's October 2012 opinion and the VA rating were discounted by the ALJ in part based on Dr. Spivey's conclusion that Plaintiff "could perform simple tasks with simple instructions" (R.p. 26), Dr. Spivey only stated that Plaintiff "may be capable of such" (R.p. 761).

It is for the ALJ, not this Court, to compare and contrast this evidence and determine the weight to be accorded the VA rating in conjunction with this evidence, and he did not do so. Jamiah, 2010 WL 1997886, at * 16 [Noting that due to the significance of a VA determination, the ALJ must state specifically the weight accorded the evidence and the reason for his decision]; Bird, 699 F.3d at 343 [If ALJ does not give "substantial weight" to VA decision, he must "clearly demonstrate[ ] that such a deviation is appropriate"]. Hence, although the ALJ may have discounted



the VA rating based on the evidence cited by the Commissioner, it is simply not apparent from the decision itself, which is unclear as to whether the ALJ fully considered the VA rating and the opinions of Dr. O'Kennon.  See Nester, 2009 WL 349701 at * 2 [Noting that the Court "may not consider *post hoc* rationalizations but must evaluate only the reasons and conclusions offered by the ALJ."]; see also Bird, 699 F.3d 337, 343-344 ["SSA must give substantial weight to a VA disability rating"]; SSR 06-03P, 2006 WL 2329939, at * 7 (SSA) [ALJ "should explain the consideration given to [the VA disability determination] in notice of decision . . ."]; cf. Kowalske, 2012 WL 32967, at * 4 [Noting that since the VA determination is itself entitled to at least some evidentiary weight in addition to the other record evidence, the adjudicator should explain the consideration given to this decision].

As such, the ALJ's minimal discussion of the VA rating in his decision is not sufficient to "'clearly demonstrate' that ... a deviation from a finding of substantial weight is appropriate." Nester, 2009 WL 349701, at * 2 (quoting Bird, 699 F.3d at 343).  Therefore, this action should be remanded to the Commissioner for a more proper weighing of Plaintiff's VA disability rating pursuant to the methodology outlined in Bird.  Cf. Rosales v. Colvin, No. 14–4265, 2015 WL 9598864, at *10, (Dec. 16, 2015)[recommending remand for assessment of VA disability rating in accordance with the Bird standard], adopted by 2016 WL 55278 (D.S.C. Jan. 5, 2016), Lawson v. Colvin, No. 14–4662, 2015 WL 7769234, at *4 (Nov. 17, 2015)[same], adopted by 2015 WL 7776897 (D.S.C. Dec. 2, 2015); Sims v. Colvin, No. 14–3005, 2015 WL 5474760, at *6 (D.S.C. Sept. 17, 2015) [remanding for evaluation of VA ratings in accordance with the Bird standard]; Cobbs v. Colvin, No. 12–3472, 2014 WL 468928, at *8 (D.S.C. Feb. 4, 2014) [same].

With respect to any remaining claims of error asserted by the Plaintiff, the ALJ will be able to reconsider and re-evaluate the evidence in toto as part of the reconsideration of this claim.

15



Hancock v. Barnhart, 206 F.Supp.2d 757, 763-764 (W.D.Va. 2002)[On remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted *de novo*].

## Conclusion

Based on the foregoing, and pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner with remand in Social Security actions under Sentence Four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be **reversed**, and that this case be **remanded** to the Commissioner for the administrative action as set forth hereinabove, and for such further administrative action as may be necessary. See Shalala v. Schaefer, 509 U.S. 292 (1993).

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

August 22, 2016
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

